UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ABDUL LATIFI,

    Plaintiff,

v.

DONALD NEUFELD, et al.,

    Defendants.

Case No. 13-cv-05337-BLF

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

[Re: ECF 34, 35]

    This is a mandamus and declaratory-relief action by plaintiff Abdul Latifi ("Plaintiff") in connection with an application to adjust immigration status pending with the United States Citizenship and Immigration Service ("USCIS") since August 2001.[1]  Before the Court is the motion by Defendants[2] to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim.  In the alternative, Defendants move for summary judgment.  Plaintiff cross moves for summary judgment in his favor.  The Court heard oral argument on May 21, 2015.  After careful consideration, the Court hereby DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction, GRANTS Defendants' motion to dismiss Plaintiff's due

---

[1] When Plaintiff filed his application, USCIS was still known as the Immigration and Naturalization Service ("INS").

[2] Defendants, as identified in Plaintiff's November 15, 2013 Complaint, are: Donald Neufeld, Associate Director of the USCIS Nebraska Service Center; Alejandro Mayorkas, Director of the USCIS; Rand Beers, Acting Secretary of the United States Department of Homeland Security; and Eric Holder, United States Attorney General.

1  process claim for failure to state a claim, DENIES Defendants' motion for summary judgment,
2  and GRANTS Plaintiff's motion for summary judgment.

3  **I.  BACKGROUND**

4  Plaintiff is a native and citizen of Afghanistan who now lives in San Jose, California.
5  Compl. ¶ 6, ECF 1.  He entered the United States as a temporary visitor on June 7, 2001.  Decl. of
6  Gareth R. Canaan ¶ 3, ECF 15-1.  Plaintiff applied for asylum on August 16, 2001 and was
7  granted asylum on October 3, 2001.  Compl. ¶ 1.  One year later, Plaintiff became eligible to seek
8  permanent resident status under § 209 of the Immigration and Nationality Act ("INA"), 8 U.S.C. §
9  1159, and, on October 7, 2002, he filed a Form I-485 Application to Register Permanent
10 Residence or Adjust Status ("AOS Application"), also known as a green card application.  Compl.
11 ¶ 1.  In order to obtain a green card, an applicant must clear several forms of security and
12 background checks and be not inadmissible under certain statutory grounds including health,
13 criminal, and national security-related grounds.  Canaan Decl. ¶¶ 7-8; *see* 8 U.S.C. §§ 1159, 1182;
14 8 C.F.R. § 209.2.  The Department of Homeland Security ("DHS") completed the Interagency
15 Border Inspection System ("IBIS") check on Plaintiff and, on December 4, 2002, submitted
16 Plaintiff's name check request to the Federal Bureau of Investigation ("FBI").  Canaan Decl. ¶¶ 8,
17 10-11.  The name check was finished by December 13, 2003.  *Id.* ¶ 11.  Despite the prompt
18 completion of these required background and security checks, Plaintiff's application remained
19 pending for another four years.  It is undisputed that the background and security checks are the
20 not the cause of the delay in adjudicating Plaintiff's case.  *Id.* ¶¶ 8-11.

21 On February 22, 2008, the USCIS denied Plaintiff's AOS Application after determining
22 that he was inadmissible under INA § 212(a)(3)(B)(i), 8 U.S.C. § 1182(a)(3)(B)(i), for providing
23 "material support to Jamiat Islami," a "Tier III" terrorist organization.  Compl. ¶ 1; Canaan Decl. ¶
24 15.  Plaintiff admitted in a declaration attached to his application that he supplied Jamiat Islami
25 troops and "'refugees' in the panjishir" with clothing, money, and medicine.  Canaan Decl. ¶ 13.
26 According to Defendants, this aid renders him inadmissible—and, accordingly, ineligible for a
27 green card—under the expanded terrorism-related grounds of inadmissibility enacted following
28 the 9/11 terrorist attacks.  Canaan Decl. ¶¶ 11-16; *see also* 8 U.S.C. §§ 1182(a)(3)(B)(i)(I),

(a)(3)(B)(iv)(VI).

On December 26, 2007, the Consolidated Appropriations Act of 2008 ("CAA") expanded the discretionary authority of the Secretary of the DHS "to exempt certain terrorist-related inadmissibility grounds as they relate to individual aliens" and exempt specific Tier III terrorist organizations from being considered terrorist organizations. Canaan Decl. at ¶ 18; *see* 8 U.S.C. § 1182(d)(3)(B)(i). The procedure for an exercise of this discretionary exemption authority is "intentionally deliberative," requiring consultation with the Secretary of State and the Attorney General. Canaan Decl. ¶¶ 17-19. On March 26, 2008, the Deputy Director of the USCIS issued a memorandum instructing adjudicators to withhold adjudication of cases that may benefit from the Secretary's expanded authority under the CAA. *Id.* ¶ 20. Later revisions to the policy indicate that an application placed on hold under these circumstances may be denied "if the adjudicator and subsequent reviewers determine that the applicant does not warrant a favorable exercise of discretion, even if a discretionary exemption should be authorized at a future date." *Id.* ¶ 22.

Plaintiff filed a motion to reopen or reconsider the denial of his AOS Application on March 20, 2008, six days prior to that memorandum. *Id*. ¶ 6. In a letter dated April 30, 2008, the USCIS informed Plaintiff that it had reopened his AOS Application and "place[d] it on hold" because "at this time the record is not sufficient to establish eligibility for the benefit sought." Compl. Exh. B. It is undisputed that USCIS placed Plaintiff's application on hold pursuant to the March 20, 2008 policy memorandum and its subsequent revisions. Canaan Decl. ¶¶ 21-22. Although several exemptions have been issued to date, there is no exemption applicable to Plaintiff's application as of yet. *Id.* ¶¶ 23-28. As such, Plaintiff's application remains on hold "to await the possibility of a future exemption that might allow the application to be approved." *Id.* ¶ 21; *see also* Defs.' Mot. 10, ECF 34.

More than six years since his application was reopened and put on hold, Plaintiff filed suit in this Court on November 15, 2013. Plaintiff brings claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, seeking an order compelling USCIS to adjudicate his still-pending AOS Application. *See* Compl. ¶¶ 21-22. Plaintiff also asserts a claim under the Fifth Amendment for deprivation of procedural due process

3

in connection with the "denial" of his AOS Application. *Id.* ¶¶ 30-34. Defendants filed a motion to dismiss or, in the alternative, for summary judgment, and Plaintiff cross moved for summary judgment. ECF 34, 35. After the motions were fully briefed, the USCIS issued a Request for Evidence ("RFE") on July 23, 2014, requesting that Plaintiff provide additional information of his relationship with the Jamiat Islami. *See* Defs.' Notice, ECF 29. The USCIS indicated that the purpose of the new RFE was to consider whether Plaintiff could benefit from a new exemption to terrorist grounds of inadmissibility addressing individuals who provided "insignificant amounts" of material to support specific terrorist organizations. Stipulation at 2, ECF 27; Joint Case Management Statement at 4, ECF 31. Given the new developments, the parties also agreed to stay this action for six months so that the USCIS could consider the RFE and Plaintiff's application. *See* Stipulation at 2. Based on its review of Plaintiff's responses to the RFE, the USCIS does not expect to be able to grant his AOS Application and, as such, has taken no further action on the application. Joint Case Management Statement at 4. It is unclear whether Plaintiff may still be able to benefit from future exemptions. Canaan Decl. ¶¶ 19-32. It is, however, undisputed that Plaintiff's application remains on hold because of the USCIS policy of holding such applications pending future exemption-related guidance. *Id.* ¶¶ 20-22, 30, 32. If Plaintiff's application were adjudicated today, it would "likely be denied without prejudice to allow him to re-file." *Id.* ¶ 31.

On February 19, 2015, Defendants filed the instant motion, arguing that this Court does not have subject matter jurisdiction to consider Plaintiff's claims, that Plaintiff failed to state a due process claim, and, in the alternative, that the Court should find on summary judgment that the delay in adjudicating Plaintiff's AOS Application is not unreasonable. Defs.' Mot., ECF 34. Plaintiff cross-moved, seeking a determination that the more than six year delay in adjudicating his application is unreasonable. Pl.'s Mot., ECF 35.

**II.  DEFENDANTS' MOTION TO DISMISS**

**A.  Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. Therefore, a court must dismiss any case if it lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A party challenging a court's subject matter

jurisdiction may make a facial or factual attack on jurisdiction. *Islam v. Heinauer*, No. C 10-04222 JSW, 2011 WL 2066661, at *2 (N.D. Cal. May 25, 2011) ("*Islam I*"). A facial attack challenges the sufficiency of the jurisdictional allegations in a complaint. *Id*. In this case, Defendants assert a factual challenge, which instead "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court." *Id.* (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). When evaluating a factual attack on jurisdiction, the court "need not assume the truthfulness of the plaintiff's allegations." *Id*.

Defendants contend that the REAL ID Act deprives this Court of subject matter jurisdiction. The statute provides:

> [N]o court shall have jurisdiction to review—… (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security…

8 U.S.C. § 1252(a)(2)(B)(ii). Defendants argue that the adjudication hold on Plaintiff's AOS Application is "within the discretion of the Secretary of Homeland Security," as 8 U.S.C. § 1159(b) vests the Secretary with the authority and discretion to promulgate regulations governing the decision procedures in connection with adjustment of status applications. Defs.' Mot. 13; 8 U.S.C. § 1159(b); *Singh v. Napolitano*, 710 F. Supp. 2d 123, 129-30 (D.D.C. 2010). Numerous courts in this district have rejected this argument, and this Court follows suit. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014) ("*Islam II*"); *Dosouqi v. Heinauaer*, No. C 12-3946 PJH, 2013 WL 664150, at *1 (N.D. Cal. Feb. 22, 2013); *Beyene v. Napolitano*, C 12-01149 WHA, 2012 WL 2911838, at *2-3 (N.D. Cal. July 13, 2012); *Islam I*, 2011 WL 2066661, at *2; *Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574, at *4-6 (N.D. Cal. Apr. 6, 2009); *Ahmed v. Scharfen*, No. C 08-1680 MHP, 2009 WL 55939, at *6-7 (N.D. Cal. Jan. 7, 2009).

The USCIS has a non-discretionary duty to *adjudicate* applications. The APA mandates adjudication "within a reasonable time," 5 U.S.C. § 555(b), and Congress expressed a "sense" in the INA that "the processing of an immigration benefit application should be completed no later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b). Considered within

that context, and as so many other courts have held, § 1252(a)(2)(B) deprives a district court of subject matter jurisdiction to review *decisions* on adjustment of status applications but says nothing about the *pace* in which those applications are adjudicated. *See Islam II*, 32 F. Supp. 3d at 1069; *Beyene*, 2012 WL 2911838, at *3. The decision to grant or deny Plaintiff's AOS Application is unquestionably discretionary and outside this Court's jurisdiction. Contrary to Defendants' argument, however, the "decision" to not decide Plaintiff's application is not. "To hold otherwise would be to sanction the perpetual delay of governmental obligations that are clearly mandated by the law." *Liu v. Chertoff*, C 07-00734 CRB, 2007 WL 2119427, at *1 (N.D. Cal. July 23, 2007). Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is DENIED.

### B. Failure to State a Claim

Defendants also argue under Federal Rule of Civil Procedure 12(b)(6) that Plaintiff fails to state a due process claim. A motion under Rule 12(b)(6) may be based on either the lack of a "cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference the defendant is liable for the alleged conduct. *Id.* at 678.

Defendants' Rule 12(b)(6) challenge appears to be limited to Plaintiff's third claim for deprivation of procedural due process. Defendants argue that Plaintiff lacks a constitutionally protected interest in the adjudication of his AOS Application because the benefit derived from that application is discretionary and Plaintiff cannot establish an entitlement to the benefit as such. Defs.' Mot. 16. Defendants further argue that even if Plaintiff has a constitutionally protected interest, he is receiving all of the process due to him under the unique circumstances because he still has asylee status and if the AOS Application was adjudicated, it would likely be denied. *Id*.

It is unclear what Plaintiff seeks in connection with his due process claim. Based on the allegations in the Complaint, Plaintiff appears to be contending that he has a protected interest in

6

1  obtaining permanent resident status and should therefore have an opportunity to present evidence
2  regarding his supposed material support to Jamiat Islami *before* the USCIS denies his AOS
3  Application.  *See* Compl. ¶¶ 32-33.  Any such claim is not presently ripe because of the
4  adjudication hold on Plaintiff's application.  Plaintiff's motion papers do not provide any further
5  clarity on this claim, as he neither addresses Defendants' arguments nor seeks affirmative relief in
6  this respect.  *See generally* Pl.'s Mot.; Pl.'s Reply, ECF 39.  In light of Plaintiff's silence on this
7  matter, the Court GRANTS Defendants' motion to dismiss the due process claim (third claim)
8  without leave to amend.

## III.    PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

The parties have cross-moved on the issue of the reasonableness of Defendants' delay in adjudicating Plaintiff's AOS Application.  Defendants urge this Court to find that the delay is reasonable as a matter of law.  Plaintiff contends that the more than six year delay in his application, with no foreseeable end in sight, is unreasonable as a matter of law.  The Court agrees with Plaintiff.

### A.    Legal Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  The moving party seeking summary judgment bears the initial burden of showing there is no material factual dispute.  *Id.* at 323; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 322 n.3.  A material fact is one that could affect the outcome of suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court makes no credibility determinations and does not weigh the evidence.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

7

475 U.S. 574, 587 (1986). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

**B. Discussion**

The Ninth Circuit has adopted the six-factor test enunciated in *Telecommunications Research & Action v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), for determining when an agency delay is unreasonable under 5 U.S.C. § 706(1). These six factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (as quoted in *Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001)). The Court addresses each of these factors in turn.

**i. Rule of Reason (First *TRAC* Factor)**

The first *TRAC* factor provides that "the time agencies take to make decisions must be governed by a rule of reason." *Id.* Courts focus, in part, on the length of the delay in determining the reasonableness of holds imposed upon green card applications due to terrorism-related grounds of inadmissibility. *See Islam II*, 32 F. Supp. 3d at 1071. Courts in this District have found that Defendants have a duty to adjudicate green card applications within a reasonable time and have consistently found a delay of five years or more to be unreasonable. *See Id.* at 1069-71 (finding delays of five years or more unreasonable*); cf. Beyene*, 2012 WL 2911838, at *6-7, 9 (five year pendency of application, due in part to agency policy hold, not unreasonable under the circumstances); *Qureshi v. Napolitano*, No. 11-05814 YGR, 2012 WL 2503828, at *4-5 (N.D. Cal. June 28, 2012) (five year delay unreasonable); *Islam I*, 2011 WL 2066661, at *6-7 (three year

8

1   delay not unreasonable); *Khan*, 2009 WL 941574, at *9 (delay of one year since reopening

2   application not unreasonable).

3         The Court begins by observing that while the parties dispute the length of time which

4   Plaintiff's application can be deemed pending, there is no dispute that at a minimum, the six-year

5   four-month period of time from April 30, 2008 to July 21, 2014 is relevant to the Court's

6   consideration. *See* Def.'s Mot. 34; Pl.'s Mot. 35. The Court will therefore consider the facts of

7   this case in the light most favorable to Defendants and assume that the period of delay to be

8   assessed in this case is six years and four months.

9         Defendants argue that the time the USCIS is taking to review Plaintiff's application is

10  governed by a rule of reason because the hold results directly from the CAA and the USCIS's

11  CAA-based policy memoranda that inure to Plaintiff's benefit. Defs.' Mot. 19. The exemption

12  process is "not a quick one," as "it requires consultation between the Secretary of State, the United

13  States Attorney General, and the Secretary of Homeland Security. *See id.*; 8 U.S.C. §

14  1182(d)(3)(B)(i). Accordingly, Defendants argue, these exemptions require research by law

15  enforcement and intelligence agencies, and Congress designed these exemptions to be a time-

16  consuming process. Defs.' Mot. 19; Canaan Decl. ¶¶ 19, 26-27. Defendants argue that because of

17  the important purpose and deliberative process behind these exemptions, the six year delay in

18  adjudicating Plaintiff's application is reasonable. *Id.* (citing *Irshad v. Johnson*, 754 F.3d 604, 607-

19  08 (8th Cir. 2014) (holding the delay due to extended processing was reasonable because a

20  mistaken exemption could cause serious repercussions)). Defendants moreover argue that the hold

21  benefits Plaintiff because his application would likely be denied otherwise because there is

22  presently no applicable exemption. *Id*.

23        While the Court has no reason to doubt that the exemption process is a lengthy and

24  deliberative one, the evidence demonstrates that there is no ongoing adjudication, but rather a

25  hiatus in anticipation of a nascent policy change causing Plaintiff to indefinitely "await the

26  *possibility* of a future exemption that *might* allow the application to be approved." Canaan Decl. ¶

27  21 (emphasis added). Significantly, there is no evidence, nor could Defendants' counsel provide a

28  definitive timetable on the record, that an exemption that *will* benefit Plaintiff is forthcoming. As

United States District Court
Northern District of California

9

such, the Court agrees with other courts in this District and beyond that have found an indefinite delay in adjudication was not governed by a rule of reason, particularly where the hold has already delayed adjudication for five or more years. *Islam II*, 32 F. Supp. 3d at 1072 (at some point the "seemingly indefinite delay…becomes untethered from any discernable rule of reason"); *Mugomoke v. Curda*, No. 2:10-cv-02166 KJM DAD, 2012 WL 113800, at *7 (E.D. Cal. Jan. 13, 2012); *AlShamsawi v. Holder*, No. 2:10–CV–194 CW, 2011 WL 1832938, at *2-3 (D. Utah May 13, 2011). *Beyene*, relied upon by Defendants, does not hold to the contrary, as that court considered an application that had been *pending* for five years "and on hold pursuant to agency policy for some lesser period of time." 2012 WL 2911838, at * 6. Under those circumstances, the court found that the first *TRAC* factor weighed in the defendants' favor but even so acknowledged that the case was a "close call." *Id.* at *7, 9. Were this Court to consider the entire duration that Plaintiff's application has been *pending*, the more than eleven year delay would clearly be unreasonable. *See* Pl.'s Reply 3-4.

Finally, although Defendants assert that placing Plaintiff's application on hold is to his benefit, Plaintiff asserts that if Defendants adjudicate and deny his application based on his alleged material support of a terrorist organization, he could seek review of that decision and of the determination that he is inadmissible on terrorism-related grounds in court. *See* Pl.'s Mot. 16-17. As it stands, Plaintiff argues that Defendants are effectively insulating themselves from judicial review. *Id.* at 16. Without deciding whether Plaintiff's arguments regarding judicial review are valid, it is sufficient for this Court that Plaintiff is aware of the potential consequences of USCIS's adjudication of his AOS Application and prefers a final determination to indefinite hold. Thus, the Court concludes simply that in light of the more than six years in which Plaintiff's green card application has been placed on hold and the lack of any evidence to suggest that a beneficial exemption is forthcoming, the first TRAC factor weighs in Plaintiff's favor.

### ii. Congressionally-Mandated Timetable (Second *TRAC* Factor)

The second *TRAC* factor, related to the rule of reason analysis, requires a court to consider "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80. Defendants argue there is

no scheme or provision in the INA that indicates a maximum time in which the USCIS must adjudicate asylee adjustment applications. *See* Defs.' Mot. 20-21; *see also* 8 U.S.C. § 1159(b); 8 C.F.R. §§ 209.1, 209.2, 245.1. Plaintiff admits that Congress did not set forth any specific timetable but argues that Congress suggested that the processing of an immigration benefit application should be completed "no later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Plaintiff contends that this suggestion, combined with the requirements of the APA, "compel the adjudication of adjustment applications within a reasonable time frame." Pl.'s Mot. 18.

Courts in this District have implied a statutory scheme from the 180 day timetable to process immigration benefit applications set forth in 8 U.S.C. § 1571(b). *See Beyene*, 2012 WL 2911838, at *7. Indeed, even in the absence of a Congressionally-mandated timetable, courts have still found an indefinite delay unreasonable under the APA. *See Liang v. Attorney Gen. of United States*, No. C-07-2349 CW, 2007 WL 3225441, *5 (N.D. Cal. Oct. 30, 2007) (finding defendants' argument that timing is always a matter of discretion beyond the court's power would enable defendants to avoid judicial review delays that may be postponed for more than twenty years). Thus, this factor weighs in Plaintiff's favor in light of the more than six years that his application has been pending without adjudication. *Islam II*, 32 F. Supp. 3d at 1073; *Beyene*, 2012 WL 2911838, at *7.

### iii. Effect on Human Health and Welfare and Prejudice from Delay (Third and Fifth *TRAC* Factors)

The third and fifth *TRAC* factors often overlap because both consider the extent and nature of the prejudice from the delay. *Islam II*, 32 F. Supp. 3d at 1073. The third *TRAC* factor provides that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. The fifth factor states that "the court should also take into account the nature and extent of the interests prejudiced by delay." *Id*.

Plaintiff argues that these factors tip in his favor because he is suffering directly from the delay in adjudication of his application. *See* Pl.'s Mot. 19. Specifically, Plaintiff argues that he is financially prejudiced from having to apply each year for work and travel authorization, at a cost

11

of about $825 per year with attendant processing delays such as fingerprinting and application processing times, whereas he would not have to continue renewing these authorizations if he was granted permanent resident status. Furthermore, Plaintiff contends that without permanent resident status, he is unable to petition for family members to immigrate and/or accrue eligibility to apply to become a United States citizen. *Id.* at 20. Defendants argue that Plaintiff "may be inconvenienced by the adjudication delay," but this inconvenience is outweighed by the Defendants' interest in complying with the CAA, congressional mandates, and USCIS policy. *See* Defs.' Mot. 21-22. Defendants again note that the hold is for Plaintiff's benefit, and moreover argue that the Court should not consider such factors as Plaintiff's eventual eligibility for citizenship because those benefits are not available if his application is denied. *Id.*

Because there is much at stake for both parties, this factor does not weigh heavily in either party's favor. *Islam II*, 32 F. Supp. 3d at 1073; *Beyene*, 2012 WL 2911838, at *8. However, Plaintiff is unquestionably prejudiced by keeping his application—and his status in this country—in limbo and requiring him to renew his work and travel authorization each year. The general concern for national security—while important—is therefore not enough justification to indefinitely hold an application in abeyance. *Islam II*, 32 F. Supp. 3d at 1073; *Qureshi*, 2012 WL 2503828, at *6-7; *Islam I*, 2011 WL 2066661, at *8. Therefore, the third and fifth *TRAC* factors weigh moderately in Plaintiff's favor.

### iv. Effect of Expediting Adjudication (Fourth *TRAC* Factor)

The fourth *TRAC* factor requires the Court to consider the "effect of expediting the delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. Courts have analyzed the source of the delay to determine the effect of the adjudication. *See generally Kousar v. Mueller*, 549 F. Supp. 2d 1194, 1196-98 (N.D. Cal. 2008); *Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1156 (N.D. Cal. 2007).

Defendants argue here that expediting the adjudication of Plaintiff's application would intrude on the Secretary's discretionary exemption authority granted by Congress. *See* Defs.' Mot. 23. In this case, ordering expedition of adjudication would require Defendants to truncate any consideration of a potential exemption that Plaintiff might benefit. *Id.* Plaintiff argues that

12

the USCIS has a "non-discretionary duty" to adjudicate applications within a reasonable period of time and that requiring Defendants to carry out this non-discretionary duty does not intrude upon any of the sensitive activities that Defendants identify. Pl.'s Mot. 22; *see Kousar*, 549 F. Supp. 2d at 1196; *Soneji*, 525 F. Supp. 2d at 1156.

Plaintiff has the better argument in this instance because requiring the adjudication of Plaintiff's application will not have any great effect upon the other activities that Defendants have identified. In this case, Plaintiff is only asking for Defendants to make a decision and process his application, regardless of whether any exemption can be invoked to his apparent inadmissibility. *See Qureshi*, 2012 WL 2503838, at *7 (rejecting defendants' argument about intrusion on Secretary's affairs because "[t]he Court is not directing the USCIS how to adjudicate, but merely to adjudicate"). The fourth *TRAC* factor accordingly favors Plaintiff.

### v. No Impropriety (Sixth TRAC Factor)

The final *TRAC* factor states that the Court "need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Plaintiff does not contend that the USCIS has acted in bad faith, and the Court credits Defendants' assertion that that the USCIS is diligently processing applications pursuing to applicable policy. *See* Pl.'s Mot. 22-23; Defs.' Mot. 24; Canaan Decl. ¶¶ 23-27. Nevertheless, in applying the sixth *TRAC* factor, this Court "need not find that an agency acted in bad faith to conclude an unreasonable delay." *Qureshi*, 2012 WL 2503828, at *7 (citing *Independence Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997); *see also Islam II*, 32 F. Supp. 3d at 1074. Thus, although the Court finds no impropriety in the delay, Plaintiff's application is still unreasonably delayed. The sixth factor therefore favors Plaintiff.

In summary, all of the *TRAC* factors weigh in Plaintiff's favor and toward a finding that the USCIS's delay in adjudicating Plaintiff's AOS Application is unreasonable under 5 U.S.C. § 706(1). The Court therefore GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's motion. The Court here emphasizes that this ruling is limited to finding that the USCIS must adjudicate Plaintiff's AOS Application within a reasonable amount of time. The Court expresses no opinion on how the USCIS is to adjudicate the application, nor what the

13

outcome of the adjudication should be.

## IV. ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED on the issue of subject matter jurisdiction and GRANTED, without leave to amend, on the issue of Plaintiff's failure to state a Fifth Amendment claim for violation of due process in his third claim for relief. Defendants' Motion for Summary Judgment is DENIED and Plaintiff's Motion for Summary Judgment is GRANTED.

Defendants are HEREBY ORDERED to adjudicate Plaintiff's AOS Application forthwith, but in no event later than forty-five (45) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: June 12, 2015

 _____
 BETH LABSON FREEMAN
 United States District Judge